**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

|  |  |
|---|---|
| **Metacluster LT, UAB,** | |
| **Plaintiff,** | |
| **v.** | **Civil Action No.**<br>**2:22-cv-00011-JRG-RSP** |
| **Bright Data Ltd.,** | |
| **Defendant.** | **JURY TRIAL DEMANDED** |

### FIRST AMENDED COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Metacluster LT, UAB ("Metacluster" or "Oxylabs") files this First Amended Complaint for Patent Infringement against Defendant Bright Data Ltd. ("Bright Data"). Oxylabs alleges, based on personal knowledge with respect to its own actions and upon information and belief with respect to all others' actions, as follows:

### THE PARTIES

1.      Plaintiff Metacluster LT, UAB is an entity organized and existing under the laws of the Republic of Lithuania with its principal place of business at A. Goštauto g. 40A, LT-03163, Vilnius, Lithuania.

2.      Defendant Bright Data is an entity organized and existing under the laws of Israel with its principal place of business at 3 Hamahshev St., Netanya 4250713, Israel. Bright Data designs, manufactures, makes, uses, provides, imports into the United States, sells and/or offers for sale in the United States the patented inventions of United States Patent No. 10,601,948 (the

1

"'948 Patent"), United States Patent No. 9,503,498 (the "'498 Patent"), and United States Patent No. 9,516,091 (the "'091 Patent"), including within this District, specifically including the Data Collector and related proxy network(s) (e.g., residential, data center, etc.) (the "Accused Data Collector Product"), the Web Unlocker[1] and related proxy network(s) (e.g., residential, data center, etc.) (the "Accused Web Unlocker Product"), and the Search Engine Crawler[2] and related proxy network(s) (e.g., residential, data center, etc.) (the "Accused Search Engine Collector Product") (collectively, the "Accused Products").

## JURISDICTION AND VENUE

3.      This is an action arising under the patent laws of the United States, 35 U.S.C. § 101 *et seq.*

4.      This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331, 1367, and 1338(a).

5.      This Court has personal jurisdiction over Bright Data. Bright Data, via itself or its subsidiaries or affiliates, regularly conducts and transacts business throughout the United States, in the State of Texas, and within the Eastern District of Texas in a manner that establishes sufficient minimum contacts with this forum. Bright Data has more than 25 employees in the United States,

---

[1]      Bright Data's "Web Unlocker" product is also known as, and referred to by Bright Data, as its "Unblocker" product. *Compare* https://brightdata.com/products/web-unlocker (Bright Data Web Unlocker website containing the link: "Check out our Web Unlocker ebook") *with* https://brightdata.com/static/lum_unblocker_ebook.pdf?md5=6118555-d78a59f4 (the ebook associated with the "Web Unlocker ebook" link, describing the "Unblocker" product). *See also* https://brightdata.com/blog/products-updates/how-web-unlocker-is-enabling-better-fingerprinting-auto-unlocking-and-captcha-solving ("'Unblocker' has been renamed and is now called 'Web Unlocker', utilizing the same technology, and algorithmic approach.").

[2]      Bright Data's "Search Engine Crawler" product is also known as, and referred to by Bright Data, as its "Data Collector" product. *See* https://brightdata.com/products/search-engine-crawler (including a dropdown product description of "Search Engine Collector" that links to Bright Data's "Data Collector" website).

including in Texas, that are customer facing in nature, including in sales, support, account management, and compliance. Bright Data transacts substantial business in the State of Texas, directly or through agents, including by (i) engaging in the infringement alleged herein, at least in part, in the State of Texas, and (ii) regularly doing or soliciting business in the State of Texas, engaging in other persistent courses of conduct, maintaining continuous and systematic contacts within this Judicial District, purposefully availing itself of the privilege of doing business in the State of Texas, and/or deriving substantial revenue from services provided in State of Texas. For example, Bright Data maintains a relationship with Rice University as part of Bright Data's "Bright Initiative," which includes (i) Bright Data providing Rice University with "access to leading data technology and expertise," and (ii) Bright Data sponsoring workshops during which Bright Data promotes itself and its services. Bright Data also offers for sale, sells, and advertises (including the provision of an interactive web page) the Accused Products in the State of Texas and the Eastern District of Texas, placing the Accused Products into the stream of commerce with the knowledge, understanding, and/or intention that it be used by customers located in the State of Texas, including the Eastern District of Texas and the Marshall Division. Bright Data's interactive website, available in the Eastern District of Texas and the Marshall Division, provides customers and potential customers information about the Accused Product, the ability to "Start Now," "Sign Up," "Try Now," and "Create [an] Account" for the Accused Products, the ability to "Book a demo" of the Accused Data Collector Product with Bright Data's sales team, the ability to "See a live demo now" of the Accused Search Engine Crawler Product; pricing information associated with the Accused Products; a "start guide" instructing users "how to use a ready-made Data Collector on the Bright Data Control Panel," an "ebook" advertising and instructing users as to how the Accused Web Unlocker Product works, and a "frequently asked questions" guide specifically addressing

each Accused Product. Bright Data has also appeared in this lawsuit without challenging personal jurisdiction.

6.     The Accused Products include and/or rely on Bright Data's proxy network(s), such network(s) being located throughout the United States, in Texas, and in the Eastern District of Texas. Bright Data (including under its previous name Luminati Networks, Ltd.) has previously been the subject of jurisdiction in this Court, itself filing multiple patent-infringement lawsuits against Oxylabs (and others).

7.     This Court has general jurisdiction over Bright Data due to its continuous and systematic contacts with the State of Texas and this jurisdiction. Further, Bright Data is subject to this Court's jurisdiction because it has committed (and continues to commit) patent infringement in the State of Texas and this jurisdiction.

8.     Venue is proper in this judicial district under 28 U.S.C. §§ 1391(b), (c), (d), and 1400(b), at least for the reason that Bright Data is not a resident of the United States and, accordingly, may be sued in any judicial district. Additionally, Bright Data (including under its previous name Luminati Networks, Ltd.) has previously utilized this venue, itself filing multiple patent-infringement lawsuits against Oxylabs (and others) in the Eastern District of Texas.

## FACTS

9.     Oxylabs is a leading provider of proxy services. Oxylabs' products include Scraper APIs, including its SERP Scraper API, E-Commerce Scraper API, and Web Scraper API. *See generally* https://oxylabs.io/. Oxylabs' Scraper APIs were formerly marketed under the product name Real-Time Crawler.

10.     Oxylabs' SERP Scraper API allows Oxylabs' customers to get real-time search engine data, including parsed data from both organic and paid results. Oxylabs' E-Commerce Scraper

4

API allows Oxylabs' customers to collect product, search, and other data from leading e-commerce marketplaces or standalone shops. Oxylabs' Web Scraper API allows Oxylabs' customers to extract public data from even the most advanced and complex targets, making data gathering easier for any custom web scraping project. Each of Oxylabs' Scraper APIs is powered by Oxylabs' proxy infrastructure, which includes over 100 million IPs (residential, data center, and others) located throughout the world. *See generally* https://oxylabs.io/.

11.     Bright Data competes with Oxylabs. Bright Data claims to be "the world's #1 web data platform"—"[f]rom data collection infrastructure to ready-made datasets, Bright Data allows you to retrieve the public web data you care about." https://brightdata.com/. Bright Data advertises various data collection products, including "Datasets," "Data Collector," "Web Unlocker," and "Search Engine Collector." *Id.* Bright Data further advertises its proxy infrastructure, which is utilized by its various data collection products. *Id.* Bright Data's proxy infrastructure includes at least residential proxies, data center proxies, ISP proxies, and mobile proxies. *See generally* https://brightdata.com/.

12.     The '948 Patent, titled "Smart Proxy Rotator," issued on March 24, 2020. *See* Ex. A. Martynas Juravicius and Eivydas Vilcinskas are the named inventors of the '948 Patent. The '948 Patent application (No. 16/669,149) was filed October 30, 2019, and is a continuation of application No. 16/590,040, filed on October 1, 2019. Metacluster LT, UAB is the assignee and sole owner of the '948 Patent.

13.     Bright Data has been on actual notice of the '948 Patent since at least May 2021. On May 21, 2021, Bright Data filed a Petition for *Inter Partes* Review of U.S. Patent No. 10,601,948 before the United States Patent and Trademark Office's Patent Trial and Appeal Board ("the '948 IPR Petition"). The '948 IPR Petition challenged all claims (i.e., claims 1-20) of the

'948 Patent, requesting that the PTAB cancel each challenged claim. Oxylabs did not notify Bright Data of the '948 Patent or accuse Bright Data of infringing the '948 Patent before Bright Data filed the '948 IPR Petition. Upon information and belief, Bright Data proactively filed the '948 IPR Petition because it was aware, by no later than May 21, 2021, of its infringement of the '948 Patent.

14.     In the '948 IPR Petition, Bright Data asserted various pieces of prior art, including (i) United States Publication No. 2017/0155623 to Smith *et al.*, (ii) United States Publication No. 2008/0225710 to Raja *et al.*, and (iii) United States Patent No. 9,241,044 to Shribman *et al.* The '948 IPR Petition challenges were based on various theories, including anticipation and obviousness combinations.

15.     Oxylabs filed a response to the '948 IPR Petition, explaining why the '948 IPR Petition should be denied as to all challenged claims.

16.     On December 1, 2021, the Patent Trial and Appeal Board issued a decision denying institution of the '948 IPR Petition, concluding that Bright Data "is not reasonably likely to prevail in demonstrating that at least one of the challenged claims is not patentable."

17.     The filing of Oxylabs' original Complaint for Patent Infringement (ECF No. 1) also constituted actual notice of the '948 Patent and of Bright Data's infringement thereof.

18.     Despite having notice of the '948 Patent, Bright Data has continued to, and continues to, infringe the '948 Patent, as explained in detail below.

19.     The '498 Patent, titled "Web Page Script Management," issued on November 22, 2016. *See* Ex. B. Erik John Burckart, Robert Madey, Jr., Victor S. Moore, and Joseph Wham Ziskin are the named inventors of the '498 Patent. The '498 Patent application (No. 13/248,615) was filed September 29, 2011. Metacluster LT, UAB is the assignee and sole owner of the '498 Patent.

20.     The '091 Patent, titled "Web Page Script Management," issued on December 6, 2016. *See* Ex. C. Erik John Burckart, Robert Madey, Jr., Victor S. Moore, and Joseph W. Ziskin are the named inventors of the '091 Patent. The '091 Patent application (No. 14/546,398) was filed November 18, 2014, and is a continuation of application No. 13/429,754, which itself is a continuation of application No. 13/248,615, filed on September 29, 2011. Metacluster LT, UAB is the assignee and sole owner of the '091 Patent.

21.     Since 2017, Oxylabs has offered its Scraper API and/or Real-Time Crawler service in a manner that practices one or more claims of the '498 Patent and the '091 Patent.

22.     Collectively, the '948 Patent, the '498 Patent, and the '091 Patent are the "Asserted Patents."

23.     The filing and service of Oxylabs' original Complaint for Patent Infringement (ECF No. 1) and this First Amended Complaint for Patent Infringement each independently constitute actual notice of Bright Data's infringement of the Asserted Patents.

24.     Upon information and belief, despite having notice of the Asserted Patents, Bright Data continues to infringe the Asserted Patents, as explained in detail below.

### Accused Data Collector Product

25.     Bright Data offers the Accused Data Collector Product for sale, claiming its customers can use the Data Collector to "collect accurate data from any website, at any scale, and have it delivered to you on autopilot, in the format of your choice." https://brightdata.com/products/data-collector. According to Bright Data's website, "collecting web data yourself is hard," but "with Data Collector, it's easy." *Id.* Bright Data's website further states that the Accused Data Collector Product "adapts automatically to site changes & blocks," and that due to its ability to "adapt[] immediately," the Accused Data Collector Product is able to deliver data uninterrupted.

7

Bright Data's website further states that "[w]e run a sophisticated algorithmic process based on industry-specific know-how to seamlessly clean, match, synthesize, process, and structure the unstructured data before delivery." *Id.* Bright Data's website further states that the Accused Data Collector Product "automatically retries to adapt to real-time website changes." Bright Data's website further states that the Accused Data Collector Product will provide customers the requested data "structured and ready-to-use in the format of your choice (JSON, CSV, excel)." *Id.* Bright Data's website further states that the Accused Product provides "automated web scraping." https://brightdata.com/lp/ide.

26.     A Bright Data blog post titled "The Bright Data Top Products Lineup" advertises and instructs customers and potential customers on how to use the Accused Data Collector Product. *See*  https://brightdata.com/blog/brightdata-in-practice/the-bright-data-top-products-lineup.  The Data Collector is described as "one of the only tools out there that can put your company's data collection efforts on autopilot." *Id.* The "[t]op product features" discussed in the blog post include "[z]ero in-house infrastructure required," and "[a]dapts to real-time changes, and blockades to ensure you always gain access to your target datasets." *Id.* The "[t]op product features" discussed in the blog post also include "[c]ollects live data points as they are being generated my [sic] consumers, and target audiences," and "[t]he datasets that are delivered are ready-to-use in your format of choice e.g. API, Webhook, Amazon S3 bucket etc." *Id.* The "[h]ow it works" portion of the blog post explains that customers can either "choose from an existing data collector, ask [Bright Data] to build you a customized one, or build your own using [Bright Data's] IDE." *Id.* The "[h]ow it works" portion of the blog post further explains that the customer's "target data is delivered directly to [the customer's] teams or designated algorithms in a ready-to-use format (JSON, CSV, Excel, etc)." *Id.*

8

27.     Bright Data's Data Collector Start Guide advertises and instructs customers and potential customers on how to use the Accused Data Collector Product. https://bright-data.com/data-collector-start-guide. Customers and potential customers are given the option to (i) "search [Bright Data's] ready-made collectors," (ii) "browse existing collectors by use case," and/or (iii) perform a "domain-based search." *Id.* Customers and potential customers are also instructed on how to either use (i) Bright Data's own templates, described as "public collectors created by Bright Data that are available for all customers," or (ii) customer templates, described as a collector developed by the customer "using [Bright Data's] in-house IDE, equipped with all sorts of tools (like methods and preview tools) to help you in the development." Customers and potential customers are further instructed on how to "[u]se 'Filters' to get more specific results[,]" including to collect all data from a website by URL, via keyword, or by category. *Id.* Bright Data also offers to develop customer templates and/or custom collectors for customers and potential customers. *Id.*

28.     Bright Data's web page for its Data Collector IDE advertises and instructs customers and potential customers on how to use the Data Collector IDE to create a customer template. https://brightdata.com/lp/ide. Bright Data's Data Collector IDE web page demonstrates how customers and potential customers can select specific data on a site to be collected by the Data Collector, e.g., price, ratings, reviews, product name, etc. *Id.*; *see also* https://youtu.be/V6qR8bNsHS4. Bright Data also provides a Data Collector Browser Extension, and demonstrates how customers and potential customers can select specific data on a site to be collected by the Data Collector, e.g., price, ratings, reviews, product name, etc. https://chrome.google.com/webstore/detail/bright-data-%E2%80%94-data-collec/hpedkefjgbkdii mgiimkkeghbhjfaojj?hl=en; *see also* https://www.youtube.com/watch?v=Kh-22LVgUTw.

29.     Bright Data's Data Collector Start Guide further advertises and instructs customers and potential customers on how to "change the way the collector will format each output field in the results," providing a graphic example:



*See, e.g.*, https://brightdata.com/data-collector-start-guide.

30.     Bright Data's Data Collector Start Guide further advertises and instructs customers and potential customers on how to utilize Accused Data Collector Product via Bright Data's API:



*Id.* When a customer uses the Accused Data Collector Product via Bright Data's API, the customer does so by making an HTTP request to the Accused Data Collector Product via Bright Data's API:



*Id.* Bright Data also advertises and instructs customers and potential customers on how to utilize the Accused Data Collector Product via Bright Data's API to create a "realtime collector":

11



*Id.*; *see also* https://help.brightdata.com/hc/en-us/articles/4413298039569-How-can-I-check-a-specific-JOB-that-had-an-issue-when-setting-the-delivery-method-as-real-time-:

# How can I check a specific JOB that had an issue when setting the delivery method as real time?

5 months ago · Updated                                          Follow

If it's a realtime collector there is no such thing as a 'job'. There are only individual requests with input - output and we group them together for statistics in the history page.

The infra underneath is exactly like unblocker. You send a request and get a response. We don't store the results anywhere long-term.

    31.    Bright Data's Data Collector Start Guide further advertises and instructs customers and potential customers on how to utilize Accused Data Collector Product to receive responses to Data Collector requests in JSON format:



*See* https://brightdata.com/data-collector-start-guide.

32.     Bright Data has developed hundreds of Data Collectors for its customers and potential customers. Bright Data's website (specifically, the "frequently asked questions"/FAQ/"help" portion of its website) states that "Bright Data has developed hundreds of Data Collectors customized to popular platforms." https://help.brightdata.com/hc/en-us/articles/4413284449937-What-is-the-Data-Collector-. Bright Data's FAQ website goes on to explain how Bright Data uses its own public data collectors (including testing them every three hours) to support Bright Data's customers' general use cases. https://help.brightdata.com/hc/en-us/articles/4413290343057-What-is-a-public-Data-Collector-. Bright Data's FAQ website explains that Bright data provides "Bright Data IDE" to its customers and potential customers: "The IDE is a Public web data on any scale at your fingertips," where Bright Data's customers and potential customers can build their own collectors, debug and diagnose issues, bring their own collectors to production, and more. https://help.brightdata.com/hc/en-us/articles/4413277732881-What-is-Data-Collector-IDE-. Bright Data's FAQ website further explains that Bright Data's customers and potential customers can request that Bright Data build custom/private collectors. https://help.brightdata.com/hc/en-us/articles/4413277703825-What-is-a-private-Data-Collector-.

13

33.     Bright Data's FAQ website further explains that "[t]he Data Collector delivers enormous amounts of raw data in a structured format, and integrates with existing systems, for immediate use in competitive data-driven decisions." https://help.brightdata.com/hc/en-us/articles/4413284449937-What-is-the-Data-Collector-. An "input" for the Data Collector "are the parameters you'll enter to run your collection with. This can include keywords, URL, search items, product ID, ASIN, profile name, check in and check out dates, etc." https://help.brightdata.com/hc/en-us/articles/4413290645905-What-is-an-input-when-using-a-Data-Collector-. The "output" for the Data Collector "is the data that you've collected from a platform based on your input parameters. You'll receive your data as JSON/CSV/XLSX." https://help.brightdata.com/hc/en-us/articles/4413290789393-What-is-an-output-when-using-a-Data-Collector-.

34.     Bright Data's website further advertises and instructs customers and potential customers specifically in the "e-commerce" use case regarding why and how to use the Accused Data Collector Product. https://brightdata.com/use-cases/ecommerce. For example, Bright Data's "e-commerce" use case website states that its customers and potential customers can "[m]onitor competitor inventory and pricing in real-time with Data Collector, the world's #1 platform for e-commerce and retail website data," including the following graphic representing the Data Collector Product:



*Id.* In the "[h]ow it works" portion of Bright Data's "e-commerce" use case website, Bright Data explains that the first step is to "[c]hoose the websites to collect from," the second step is to "[s]elect the frequency: real-time or scheduled, and deliver format: JSON, CSV, HTML, or XSLS," and the third step is to "[d]ecide where to send the data: webhook, email, Amazon S3, Google Cloud, Microsoft Azure, SFTP, or API." *Id.*

35.    The Accused Data Collector Product includes, uses, and/or relies on Bright Data's proxy networks, including its network of residential and data center proxies. For example, a Bright Data webinar titled "How to Automate your Data Collection | Luminati Data Collector Webinar |

Dec - 21 2020"[3] includes a discussion of the "data collection pyramid," the bottom of which includes a listing of Bright Data's various proxy networks: data center, static residential, rotating residential, and mobile:



*See* https://www.youtube.com/watch?v=q8kFe5MPAC0. A Bright Data employee presenter states during the webinar that Bright Data's Data Collector customers "don't have to build all the infrastructure around a crawler—they just have to say what it does, and then we handle the scaling and we handle the operations." *Id.* The same presenter further states that the Data Collector is "an ethical approach" because "all of the peers that are part of our residential network are opt-in," demonstrating that the Data Collector utilizes at least Bright Data's residential proxy network. *Id.*

---

[3]     The description associated with this webinar states that "[t]his webinar was entirely dedicated to Luminati's Data Collector, including a live demo, as well as discussing key obstacles, and opportunities of end-to-end automation." *See* https://www.youtube.com/watch?v= q8kFe5MPAC0. It further states that "[a]fter attending this webinar you will: Get practical tools to help your company benefit and transition to an automated data solution." *Id.*

36.     The webinar titled "How to Automate your Data Collection | Luminati Data Collector Webinar | Dec - 21 2020" concludes with a question-and-answer session. *Id.* The first question posed to the two Bright Data employee presenters is as follows: "how do we say what type of peers to use, data center, residential, etc., what kind of peers?" *Id.* A Bright Data employee responds: "The quick answer will be that you will not need to use or to choose what kind of, what type of network you want to use because we will do it in the background for you, meaning that you will only need to develop the collector and we will chose the right network for you." *Id.*

### Accused Web Unlocker Product

37.     Bright Data offers the Accused Web Unlocker Product for sale, claiming its customers can use the Web Unlocker "to reach your target sites at unprecedented success rates," and to "[s]end one request with this powerful unlocking technology, and [Bright Data will] get you the most accurate data available." https://brightdata.com/products/web-unlocker. According to Bright Data's website, the Web Unlocker includes "[c]ontent verification" functionality: "[a]utomatic validation of content integrity based on response content, data types, request timing, and more." *Id.* Bright Data's website also contains a graphic under the heading "How does it work?" that shows the following:



*Id.* Bright Data's website also alleges that the Accused Web Unlocker Product has several advantages as compared to "self managed proxies," including that the Web Unlocker includes the additional features of "[h]andling target sites markup changes," "JS rendering," and "[r]esults parsing for chosen domains," among others. *Id.*

38.     A Bright Data blog post titled "The Bright Data Top Products Lineup" advertises and instructs customers and potential customers on how to use the Accused Web Unlocker Product. https://brightdata.com/blog/brightdata-in-practice/the-bright-data-top-products-lineup. The "[t]op product features" discussed in the blog post include: "Content verification: Our systems validate the content you are being delivered using parameters such as request timing, and data types in order to ensure that it is accurate, and reliable." *Id.* The "[h]ow it works" portion of the blog post explains that customers can start using the Accused Web Unlocker Product "by creating a [cURL] request and then [Bright Data's] technology takes care of the rest." *Id.* The "[h]ow it works" portion of the blog post further explains that the customers can send their query to the Web Unlocker, which thereafter utilizes "one of [Bright Data's] 'Super Proxies' located on every continent in close proximity geographically to your target site" and "one of our four proxy infrastructure networks." *Id.* The "[h]ow it works" portion of the blog post further explains that the customer's "desired dataset is retrieved and delivered to [the customer] in [the customer's] desired format." *Id.*

39.     Bright Data's Unblocker ebook advertises and instructs customers and potential customers on how to use the Accused Web Unlocker Product. https://brightdata.com/static/lum_unblocker_ebook.pdf?md5=6118555-d78a59f4. The Unblocker ebook states that, "[w]ith the Unblocker, you just send one request, and we will handle everything in the background ensuring you won't get blocked and only receive the most accurate data available." *Id.* The

Unblocker ebook further explains that Bright Data's customers can send their requests to the Accused Web Unlocker Product using a Bright Data API, "using a simple cURL request":

## API

**You can send requests with our proxy API using a simple cURL request.**

```
curl --proxy zproxy.lum-superproxy.io:22225 --proxy-user lum-customer-
{your_customer_id}-zone-{your_zone}-unblock:{zone_password} -k "http://
lumtest.com/myip.json"
```

*Id.*

40.     A Bright Data webinar titled "Jason Tan | Data Driven Analytics | Bright Data | Price Optimization Webinar | Ecommerce" describes, in part, how the Accused Web Unlocker Product operates. *See* https://www.youtube.com/watch?v=Pjq_bETnbvo. In that webinar, a Bright Data employee explains that "today we already offer even easier solutions which of course also rely on our residential network, but these solutions also automatically handle any blocking issues." The same employee goes on to state that customers and/or potential customers can "use our web unlocker or data collector, and that handles everything for you—the only thing you need to know is what is the target pages that you want to fetch the information for, from, and we will do everything else pretty much and deliver that information to you." *Id.*

41.     The Accused Web Unlocker Product includes, uses, and/or relies on Bright Data's proxy networks, including its network of residential and data center proxies. For example, the graphic above, from Bright Data's website, shows the Accused Web Unlocker Product including, using, and/or relying on "Bright Data Proxy Infrastructure" (including Bright Data's "Data Center," "ISP," "Residential" and "Mobile" proxies, as well as a Bright Data "Super Proxy."

19

https://brightdata.com/products/web-unlocker; *see also* https://brightdata.com/blog/brightdata-in-practice/web-unlocker-is-better-than-any-premium-proxy.

**Accused Search Engine Crawler Product**

42.     Bright Data offers the Accused Search Engine Crawler Product for sale, claiming its customers can "[g]et real user search results, for any keyword, on every search engine." https://brightdata.com/products/search-engine-crawler.   According to Bright Data's website, Bright Data's Search Engine Crawler product first require the customer to decide "which data sets you need access to," then "[s]end a request with [the customer's] specific parameters, then "[g]et responses in JSON or HTML format for easy integration with any system." *Id.* The following graphics are then shown, representing this process:



. . .



*Id.* Bright Data's website goes on to list "Additional Benefits" of the Accused Search Engine Crawler Product, including the ability to "[c]ollect SERP results as any real user would from any worldwide location" and the ability to utilize "72 million+ real user IPs in all geolocations."

43.    Bright Data's FAQ website further advertises and instructs customers and potential customers regarding the features, benefits, and uses of the Accused Search Engine Crawler Product.   https://help.brightdata.com/hc/en-us/sections/4413189032977-Search-Engine-Crawler.   For example, Bright Data's FAQ website lists the "benefits" of the Search Engine Crawler as including "JSON" and the ability to "[g]et responses in JSON or HTML format for easy integration with any system."   https://help.brightdata.com/hc/en-us/articles/4413229939089-What-are-the-benefits-of-Search-Engine-Crawler-. Bright Data's FAQ website further explains how the Search Engine Crawler works, including the following graphic:



https://help.brightdata.com/hc/en-us/articles/4413229958289-How-does-Search-Engine-Crawler-works-. Bright Data's FAQ website also explains that multiple code language are supported, including "cURL" requests:

**Technical usage:**

- Search Engine Crawler API service is only available via API.
  - Note: running API requires Search Engine Crawler Active zone.
- Supported code languages are: curl, node.js, java, c#, python
- Session continuity is not supported as each request is sent from a different IP.
- HTTP and HTTPS urls can be targeted.

*Id.* Bright Data's FAQ website also states that the Accused Search Engine Crawler Product "API service is only available via API," and that "HTTP and HTTPS urls can be targeted." *Id.*

44.     Bright Data's website further advertises and instructs customers and potential customers specifically in the "Search Engine Crawler" use case regarding why and how to use the Accused Search Engine Crawler Product. https://brightdata.com/use-cases/serp. For example, Bright Data's "search engine crawler" use case website states that its customers and potential customers can "Send google, bing and yahoo search requests through the largest residential proxy network in the world." *Id.* Bright Data's "search engine crawler" use case website further states

22

that Bright Data's "API is compatible with multiple coding languages and allows for easy integration into any 3rd party software by returning requests in HTML or a JSON file for your parsing needs." *Id.*

45.     A Bright Data blog post titled "The Bright Data Top Products Lineup" advertises and instructs customers and potential customers on how to use the Accused Search Engine Crawler Product.    https://brightdata.com/blog/brightdata-in-practice/the-bright-data-top-products-lineup. The "[t]op product features" discussed in the blog post include: "[r]eceiving streamlined, high performance results no matter what volume requests are sent at," and "[customers] are not limited to text," as they "can collect datasets in the form of images, video, items for sale, maps, available hotel rooms etc." *Id.* The "[h]ow it works" portion of the blog post explains that customers can "[g]et data in either JSON or HTML format so that you can integrate it into your systems, and derive insights as soon as possible." *Id.*

46.     The Accused Search Engine Crawler Product includes, uses, and/or relies on Bright Data's proxy networks, including its network of residential and data center proxies. For example, the graphic shown in Paragraph 43 above, from Bright Data's FAQ website, shows the Accused Search Engine Crawler Product including, using, and/or relying on Bright Data's "Super Proxy," "Residential IP," and "peer." https://help.brightdata.com/hc/en-us/articles/4413229958289-How-does-Search-Engine-Crawler-works-; *see also* https://brightdata.com/products/search-engine-crawler ("72 million+ real user IPs in all geolocations").

**Proxy Networks**

47.     The Bright Data proxy networks included in, used by, and/or relied on by the Accused Products include Bright Data's residential proxy network, which Bright Data advertises as

consisting of "72 million+ IPs around the world." https://brightdata.com/proxy-types/rotating-res-idential-ips. Bright Data's website includes the following graphic describing its residential proxies:



https://brightdata.com/blog/brightdata-in-practice/ultimate-guide-to-proxy-types.

48.    Bright Data's website further describes its residential proxies as follows:

**How residential proxies work**

Residential proxies essentially route your internet traffic through an intermediary server. The **proxy server** *assigns* you an alternative IP through which all of your server requests are channeled.

Note that the alternative IP address assigned, belongs to a real device. When you make a search request, it is conveyed to the resource server via your **residential proxy**. This way, your real IP is concealed, and sites perceive your activity as that of any other regular user.

Depending on the provider, an ideal residential proxy package affords the option of targeting countries, cities and all requests should be HTTPS encrypted for security.

https://brightdata.com/blog/guest-post/residential-proxies-web-scraping. The website goes on to discuss "some uses of residential proxies you may want to consider," including the following ex-cerpt:

**Web scraping**

Internet marketing goes far beyond casual ads and social media posts. You've got to study your competitors and learn their ways. The best way to access your competitor's info is by **web scraping**. Web scraping with residential proxies is possible because they support mass scraping by allowing you to continuously *rotate the IPs*. It is important to note that **data center proxies** can also be used for web scraping. Are you confused about data center IP proxy? Learn from **this post**. However, they are best suited for use on a much smaller scale. If you want to do large scale scraping on Google, LinkedIn, Facebook, and other giant sites, **residential proxies** are the best.

49.     Bright Data's website also includes a webpage discussing "Proxies for web data extraction," wherein Bright Data states that it has "+72,000,000 residential IPs to scrape the most accurate data from across the globe, never getting blocked or misled." https://brightdata.com/use-cases/web-data-extraction. Bright Data recommends that, "[t]o ensure you collect the right kind of data suited to your business, you need make to the web transparent again, meaning view websites as the average consumer would do. Using a city or country targeted residential IP with the right settings will allow you to overcome these blockades with a transparent truthful view. Allowing you to collect the most accurate data available." *Id.*

50.     Bright Data's website also includes as webpage discussing the differences between "web crawling" and "web scraping," stating as follows:

Web Scraping, however, targets in on some particular type of information. It can be referred to as web data extraction and also uses bots or crawlers with very specific guidelines of what is to be collected. This could be links or certain HTML body elements, *data sets* or .jpeg files, where the exact data set identifier is known.

The difference between Web Crawling and Web Scraping is that **crawling is more generic**, it collects ALL available information and is more associated with the actions of a Search Engine. Scraping, however, is **targeting key identifiers** and honing in on them. This is more commonly done by companies looking to conduct deep data analyses for a very specific use.

Companies utilize this data to compare prices across different markets and locations. It is used to protect brands by ensuring the proper use of their intellectual content, insignia, and trademarks. Data mining is used for research including academic, marketing or scientific studies. Almost every company utilizes this vast network of information for market research, people data, competitive intelligence and more.

For the best results when web scraping, use **Bright Data's Residential Proxy Network** Connect to real-peer IPs in any **geolocation** and scrape like a pro with our built-in features such as a **Captcha Resolver** and **Automatic Refreshing of IPs**. **Collect the most accurate and unbiased data available**!

https://brightdata.com/blog/general/crawling-vs-scraping;          *see*          *also*          https://bright-

data.com/blog/guest-post/difference-between-web-crawling-and-web-scraping;          https://bright-

data.com/blog/how-tos/how-to-scrape-a-website-without-getting-blocked-or-cloaked.

51.    The Bright Data proxy networks included in, used by, and/or relied on by the Ac-

cused Products include Bright Data's data center proxy network, which Bright Data advertises as

consisting of "700,000+ IPs [a]round the world." https://brightdata.com/proxy-types/datacenter-

proxies. Bright Data's website includes the following graphic describing its data center proxies:



https://brightdata.com/blog/brightdata-in-practice/ultimate-guide-to-proxy-types.    The    website

goes on to state that "[g]enerally speaking, all use cases can be accommodated using Data Center

IPs." *Id.*

52.    The Bright Data proxy networks included in, used by, and/or relied on by the Ac-

cused Products include Bright Data's ISP proxies, which Bright Data advertises as consisting of

"600,000+ IPs [a]round the world." https://brightdata.com/proxy-types/static-residential-ips.

Bright Data's website includes the following graphic describing its ISP proxy network:



https://brightdata.com/blog/brightdata-in-practice/ultimate-guide-to-proxy-types.   The   website
then states that "ISP proxy Networks support a variety of use cases that can greatly benefit from
being able to overcome rotating and GEO-based IP blockades with the consistent use of a dedicated
pool of IPs." *Id.*

53.     Bright Data proxy networks included in, used by, and/or relied on by the Accused
Products include Bright Data's mobile proxies, which Bright Data advertises as consisting of
"7,000,000+ IPs "around the world." https://brightdata.com/proxy-types/mobile-proxies. Bright
Data's website includes the following graphic describing its mobile proxy network:



https://brightdata.com/blog/brightdata-in-practice/ultimate-guide-to-proxy-types.   The   website

further states that "[m]obile networks consist of real user mobile connections in every country and

city across the world, making them undetectable yet very effective." *Id.*

54.   Bright Data's proxy networks include a "super proxy," which Bright Data describes

as "the   point   of   entry   for   our   proxy   networks."   https://help.brightdata.com/hc/en-us/arti-

cles/4413404294673-What-is-Super-Proxy-. According to Bright Data's FAQ website, "Bright

Data's Super Proxies use advanced load balancing algorithms to provide the best results in terms

of network speed." *Id.* Bright Data further describes its super proxies as follows:



Rachel Hollander | Content Marketing Manager   03-Feb-2020                    Share:   🐦 f in 🔴

**Super proxies** (also known as 'super-nodes', or 'gateways') are the smart routers of the **Bright Data network** and are how we route our traffic worldwide. These **super proxies** are load-balancing servers, placed in close proximity to our peers, to route terabytes of traffic to exit nodes across the globe.

The term '*proxy*' is thrown around a lot to enable **data collection** activities such as **price comparison**, **market research**, **ad verification**, **website testing** and more. **Proxy servers** provide the ability to route traffic from one IP through to millions of other IP types and **geographical locations**. The infrastructure behind the scenes of your **proxy** provider will give you a true understanding of the best service for you. So how does the largest **proxy** service route its traffic worldwide? Well, it begins with a network of **Super Proxies**.

The routing servers are programmed with a proprietary technology to manage the 500,000 requests per second generated by Bright Data's customers. They begin by authenticating the requests being received by the network by verifying the username and password. If customer credentials are accurate, it then verifies the IP type requested and if the customer's account has been granted permission

https://brightdata.com/blog/brightdata-in-practice/super-proxies-data-collection.

55.   Bright Data's website includes the following graphic describing its super proxies:



https://brightdata.com/proxy-types/super-proxy.

56.     Upon information and belief, all communications between relays in Bright Data's proxy network are encrypted:

# Is communication between relays encrypted?

5 months ago · Updated                                          Follow

**Yes. For super proxy requests, you can use either HTTP or HTTPS. The communication protocol is encrypted by using a proprietary algorithm.**

https://help.brightdata.com/hc/en-us/articles/4413418365713-Is-communication-between-relays-encrypted-.

57.     Upon information and belief, the Accused Products utilize Bright Data's proxy networks, including Bright Data's "super proxies," to establish connections with target servers, and thereafter request and obtain content from those servers. For example, Bright Data's website

explains how its Data Collector product can be used to "collect accurate data from any website." https://brightdata.com/products/data-collector.

58.     The Accused Data Collector Product comprises a smart proxy rotator that provides functionality for automatically choosing and/or rotating the type of proxy network and type of proxy to be used for the various content requests made as part of the automated web scraping provided by the Accused Data Collector Product, and further for providing the chosen proxy to a web scraper of the Accused Data Collector Product. The Accused Data Collector Product is further comprised of a web scraper used to collect data from a target source, including by fetching content by targeting key identifiers.

59.     Upon information and belief, Bright Data tracks performance and availability information for each proxy (and proxy provider) in its various proxy networks. For example, Bright Data's Proxy Manager provides customers of its various proxy networks access to "success ratio metrics" that indicate the performance and availability of each proxy. https://bright-data.com/static/video/promo/how_to_start_using_the_luminati_proxy_manager.mp4; *see also* https://brightdata.com/webinar/how-to-start-using-the-bright-data-proxy-manager. Bright Data's Proxy Manager also allows customers of its various proxy networks to select a maximum number of requests that will made with a proxy before rotating to another proxy, as well as a maximum amount of time to use a proxy before rotating to another proxy.

60.     Upon information and belief, the web scraper of the Accused Data Collector Product also tracks and/or has access to performance and availability information of each proxy, and provides such information to the Accused Data Collector Product's smart proxy rotator. Upon information and belief, the Accused Data Collector Product's smart proxy rotator calculates a weight for a proxy provider using the performance and availability information for at least one

30

such proxy, and dynamically configures a utilization threshold for the proxy provider, e.g., a maximum percentage of requests for which such proxy provider will be used.

61.     As discussed above, each of the Accused Products provides functionality for a customer to send a request to and a response from the Accused Products via the customer's web browser. Such requests may include requests for web pages that contain one or more embedded scripts.

62.     Upon information and belief, each of the Accused Products are comprised of a network appliance, such as the component of each respective Accused Product that executes a browser, crawler, or scraper that makes, sends, or executes the customer's request for one or more web pages. The network appliance(s) are located in Bright Data's network between the customer's client device and the target web server. Upon information and belief, the network appliance of each Accused Product uses one or more of Bright Data's various proxy networks to fetch the web page requested via the customer's browser from the target server. Upon information and belief, the response to the customer's request is intercepted by the network appliance.

63.     Upon information and belief, the network appliance in each of the Accused Products that intercepts the web page requested by the customer's browser executes any embedded scripts contained in the web page. Upon information and belief, the network appliance creates a modified web page with the embedded scripts removed. The modified web page is then sent by the network appliance to the customer's browser in response to the request from the customer's browser.

64.     Oxylabs has, to the extent required, complied with the marking statute, 35 U.S.C. § 287.

65.     Oxylabs served its Disclosures Pursuant to Patent Rules 3-1 and 3-2 (i.e., its in-fringement contentions) demonstrating infringement of the Asserted Patents on May 4, 2022—Oxylabs incorporates its Disclosures Pursuant to Patent Rules 3-1 and 3-2 by reference as if fully set forth herein. *See* Ex. D.

### COUNT I
### (CLAIM FOR PATENT INFRINGEMENT OF THE '948 PATENT)

66.     Oxylabs incorporates the foregoing paragraphs by reference as if fully set forth herein.

67.     A true and accurate copy of the '948 Patent is attached hereto as Exhibit A.

68.     All claims of the '948 Patent are valid and enforceable, and each enjoys a statutory presumption of validity under 35 U.S.C. § 282.

69.     Oxylabs is the sole owner of the '948 Patent and possesses rights to past damages.

70.     Independent claim 1 of the '948 Patent recites:

> 1. A computer-implemented method for dynamically configuring a utilization threshold of a proxy provider, the method comprising:
>
> running a smart proxy rotator (SPR) on a computing device connected to a network;
>
> obtaining a proxy from the SPR, according to currently valid SPR operational settings, by a Web Scraper to use for a request for content;
>
> establishing, by the Web Scraper, an encrypted connection to a target server through the proxy;
>
> requesting and obtaining the content designated within the request, through the encrypted connection, by the Web Scraper;
>
> providing, by the Web Scraper, performance and availability information of the proxy to the SPR;
>
> calculating, at the SPR, a weight for the proxy provider; and
>
> dynamically configuring utilization threshold of the proxy provider based on the calculation.

71.     As described above, Bright Data has infringed (both literally and/or under the doctrine of equivalents) and/or induced infringement of the '948 Patent by designing, manufacturing, making, using, providing, importing into the United States, selling and/or offering for sale in the United States, or by intending that others perform such acts, products and/or methods covered by at least claims 1-8, 10-15, and 17-20 of the '948 Patent, including but not limited to the Accused Data Collector Product.

72.     As described above, Bright Data designs, manufactures, makes, uses, provides, imports into the United States, sells and/or offers for sale in the United States the Accused Data Collector Product and thus directly infringes (both literally and/or under the doctrine of equivalents) the '948 Patent.

73.     As described above, upon information and belief, the Accused Data Collector Product includes a smart proxy rotator within its network. Upon information and belief, the Accused Data Collector Product includes a web scraper that obtains a proxy from the smart proxy rotator in accord with the smart proxy rotator's operational settings. Upon information and belief, the Accused Data Collector Product includes a web scraper that establishes an encrypted connection to a target server through the proxy. Upon information and belief, the Accused Data Collector Product includes a web scraper that requests and obtains content through the encrypted connection. Upon information and belief, the Accused Data Collector Product includes a web scraper that provides performance and availability information of the proxy to the smart proxy rotator. Upon information and belief, the Accused Data Collector Product calculates, at the smart proxy rotator, a weight for the proxy provider. Upon information and belief, the Accused Data Collector Product dynamically configures a utilization threshold of the proxy provider based on the calculation.

74.     Bright Data also indirectly infringes the '948 Patent. As explained above, at least as early as May 2021, Bright Data has been on actual notice of the '948 Patent. Additionally, Bright Data has actual notice of the '948 Patent since at least the filing of Oxylabs' original Complaint for Patent Infringement (ECF No. 1), and knows at least from that Complaint that the Accused Data Collector Product practices the steps of at least claims 1-8, 10-15, and 17-20 of the '948 Patent.

75.     Bright Data indirectly infringes the '948 Patent by inducing infringement by others, such as Bright Data's customers that use the Accused Data Collector Product, in this District and elsewhere in the United States. For example, Bright Data's customers directly infringe at least claims 1-8, 10-15, and 17-20 of the '948 Patent when they use the Accused Data Collector Product as intended and instructed by Bright Data. As explained above, Bright Data instructs its customers (and potential customers) regarding how to use the Accused Data Collector Product (including how to create and use custom data collectors via Bright Data's Data Collector IDE). Such instructions include Bright Data's website discussing the Data Collector product (https://bright-data.com/products/data-collector), Bright Data's website (and video) discussing the Data Collector start guide (https://brightdata.com/data-collector-start-guide), Bright Data's FAQ website discussing the Data Collector (what it is and how to use it) (https://help.brightdata.com/hc/en-us/categories/4413047402001-Data-Collector),        Bright        Data's        YouTube        channel (https://www.youtube.com/channel/UCM_0cG1ljAoEUcZIyoUIq6g), including videos on that channel discussing the Data Collector and related proxy network(s) (e.g., residential, data center, etc.)     (e.g.,     the     publicly     available     Bright     Data     videos     at,     e.g., https://www.youtube.com/watch?v=q8kFe5MPAC0&t=424s                          and https://www.youtube.com/watch?v=Kh-22LVgUTw).

76.     As a result of Bright Data's infringement of the '948 Patent, Oxylabs has suffered and continues to suffer damages. Thus, Oxylabs is entitled to recover from Bright Data the damages Oxylabs sustained (and continues to sustain) as a result of Bright Data's wrongful and infringing acts in an amount no less than its lost profits and/or a reasonable royalty, together with interest and costs fixed by this Court together with increased treble damages under 35 U.S.C. § 284.

77.     Bright Data's infringement of the '948 Patent has been willful. At least as early as May 2021, Bright Data has been on actual notice of the '948 Patent. Upon information and belief, Bright Data deliberately and intentionally infringed, and continues to deliberately and intentionally infringe, the '948 Patent. Bright Data knew or should have known that its actions would cause infringement of the '948 Patent, yet, Bright Data has, and continues to, infringe the '948 Patent. Upon information and belief, Bright Data challenged the validity of the '948 Patent by filing its IPR because it has actual knowledge of its infringement.

78.     This is an exceptional case warranting an award of treble damages to Oxylabs under 35 U.S.C. § 284, and an award of Oxylabs' attorney's fees under 35 U.S.C. § 285.

## COUNT II
### (CLAIM FOR PATENT INFRINGEMENT OF THE '498 PATENT)

79.     Oxylabs incorporates the foregoing paragraphs by reference as if fully set forth herein.

80.     A true and accurate copy of the '498 Patent is attached hereto as Exhibit B.

81.     All claims of the '498 Patent are valid and enforceable, and each enjoys a statutory presumption of validity under 35 U.S.C. § 282.

82.     Oxylabs is the sole owner of the '498 Patent and has rights to past damages.

83.     Independent claim 1 of the '498 Patent recites:

35

1. An apparatus, comprising:

at least one processor;

a memory communicatively coupled to the at least one processor, the memory storing executable code that, when executed by the at least one processor, causes the at least one processor to implement a network appliance by:

intercepting a web page sent from a server and addressed to a client browser;

modifying the web page by removing an embedded script from the web page;

executing, by the network appliance, the removed embedded script; and

sending the modified web page to the client browser.

84.     As described above, Bright Data has infringed (both literally and/or under the doc-trine of equivalents) and/or induced infringement of the '498 Patent by designing, manufacturing, making, using, providing, importing into the United States, selling and/or offering for sale in the United States, or by intending that others perform such acts, products and/or methods covered by at least claims 1, 6-12, and 19 of the '498 Patent, including but not limited to the Accused Products.

85.     As described above, Bright Data designs, manufactures, makes, uses, provides, im-ports into the United States, sells and/or offers for sale in the United States the Accused Products and thus directly infringes (both literally and/or under the doctrine of equivalents) the '498 Patent.

86.     As described above, upon information and belief, the Accused Products are com-prised of a network appliance that intercepts a web page requested by a customer's browser and sent from a server, executes an embedded script from the web page, creates a modified web page with the embedded script removed, and sends the modified web page to a client browser.

87.     Bright Data indirectly infringes the '498 Patent. As explained above, at least as early as the filing of Oxylabs' original Complaint for Patent Infringement (ECF No. 1), Bright Data has been on actual notice of the '498 Patent. Additionally, Bright Data knows, at least from

that Complaint, that the Accused Products practice the steps of at least claims 1, 6-12, and 19 of the '498 Patent.

88.     Bright Data indirectly infringes the '498 Patent by inducing infringement by others, such as Bright Data's customers that use the Accused Product, in this District and elsewhere in the United States. For example, Bright Data's customers directly infringe at least claims 1, 6-12, and 19 of the '498 Patent when they use the Accused Products as intended and instructed by Bright Data. As explained above, Bright Data instructs its customers (and potential customers) regarding how to use the Accused Products. Such instructions include Bright Data's website discussing the Accused Products (https://brightdata.com/products/data-collector; https://brightdata.com/products/web-unlocker; https://brightdata.com/products/search-engine-crawler), Bright Data's website (and video) discussing the Data Collector start guide (https://brightdata.com/data-collector-start-guide), Bright Data's Web Unlocker ebook (https://brightdata.com/static/lum_unblocker_ebook.pdf?md5=6118555-d78a59f4), Bright Data's FAQ website discussing the Accused Products (describing each product and explaining to customers and potential customers how to use each product) (https://help.brightdata.com/hc/en-us), Bright Data's YouTube channel (https://www.youtube.com/channel/UCM_0cG1ljAoEUcZIyoUIq6g), including videos on that channel discussing the Accused Products and related proxy network(s) (e.g., residential, data center, etc.) (e.g., the publicly available Bright Data videos at https://www.youtube.com/watch?v=q8kFe5MPAC0&t=424s,

https://www.youtube.com/watch?v=sECHnRf3dXw,

https://www.youtube.com/watch?v=G_DJu97_Zqs, and https://www.youtube.com/watch?v=Kh-22LVgUTw), as well as the other portions of Bright Data's website discussed and cited above.

89.     As a result of Bright Data's infringement of the '498 Patent, Oxylabs has suffered

and continues to suffer damages. Thus, Oxylabs is entitled to recover from Bright Data the dam-

ages Oxylabs sustained (and continues to sustain) as a result of Bright Data's wrongful and in-

fringing acts in an amount no less than its lost profits and/or a reasonable royalty, together with

interest and costs fixed by this Court together with increased treble damages under 35 U.S.C. §

284.

90.     Oxylabs has suffered damages due to the infringing activities of Bright Data and

other persons who are in active concert or participation therewith, and Oxylabs will continue to

suffer irreparable harm for which there is no adequate remedy at law unless Bright Data's infring-

ing activities are permanently enjoined by this Court. Oxylabs practices the '498 Patent and, on

information and belief, practicing the '498 Patent is required for a competitive offering in the

market serviced by Oxylabs' Scraper API service and the Accused Products. Non-exclusive ex-

amples of such damage include loss of market share, lowered prices and the inability of Oxylabs

to obtain the revenues and profits it would have been able to obtain but for the infringement, lost

sales in other services when customers did not purchase Oxylabs' Scraper API service from Ox-

ylabs, including loss of convoyed sales, and harm to Oxylabs' reputation as a result of Bright

Data's lower quality and less protected offerings damaging the reputation and perception of the

relevant market that relies on the technology of the '498 Patent.

91.     Bright Data willfully infringes the '498 Patent. At least as early as the filing and

service of Oxylabs' original Complaint for Patent Infringement (ECF No. 1), Bright Data has been

on actual notice of the '498 Patent. Upon information and belief, Bright Data continues to delib-

erately and intentionally infringe the '498 Patent. Bright Data knew or should have known that its

actions would cause infringement of the '498 Patent, yet Bright Data continues to infringe the '498 Patent.

92.     This is an exceptional case warranting an award of treble damages to Oxylabs under 35 U.S.C. § 284, and an award of Oxylabs' attorney's fees under 35 U.S.C. § 285.

## COUNT III
### (CLAIM FOR PATENT INFRINGEMENT OF THE '091 PATENT)

93.     Oxylabs incorporates the foregoing paragraphs by reference as if fully set forth herein.

94.     A true and accurate copy of the '091 Patent is attached hereto as Exhibit C.

95.     All claims of the '091 Patent are valid and enforceable, and each enjoys a statutory presumption of validity under 35 U.S.C. § 282.

96.     Oxylabs is the sole owner of the '091 Patent and has rights to past damages.

97.     Independent claim 1 of the '091 Patent recites:

> 1.  A machine-implemented method of web page script management, said method comprising:
>
> in a network appliance implemented by at least one processor, intercepting a web page sent from a server and addressed to a client browser;
>
> modifying the web page with the network appliance by removing an embedded script from the web page;
>
> executing the removed embedded script with the network appliance; and
>
> sending the modified web page from the network appliance to the client browser.

98.     As described above, Bright Data has infringed (both literally and/or under the doctrine of equivalents) and/or induced infringement of the '091 Patent by designing, manufacturing, making, using, providing, importing into the United States, selling and/or offering for sale in the

United States, or by intending that others perform such acts, products and/or methods covered by at least claims 1, 9, and 11 of the '091 Patent, including but not limited to the Accused Products.

99.     As described above, Bright Data designs, manufactures, makes, uses, provides, imports into the United States, sells and/or offers for sale in the United States the Accused Products and thus directly infringes (both literally and/or under the doctrine of equivalents) the '091 Patent.

100.     As described above, upon information and belief, the Accused Products are comprised of a network appliance that intercepts a web page requested by a customer's browser and sent from a server, executes an embedded script from the web page, creates a modified web page with the embedded script removed, and sends the modified web page to a client browser.

101.     Bright Data indirectly infringes the '091 Patent. As explained above, at least as early as the filing of Oxylabs' original Complaint for Patent Infringement (ECF No. 1), Bright Data has been on actual notice of the '091 Patent. Additionally, Bright Data knows, at least from that Complaint, that the Accused Products practice the steps of at least claims 1, 9, and 11 of the '091 Patent.

102.     Bright Data indirectly infringes the '091 Patent by inducing infringement by others, such as Bright Data's customers that use the Accused Product, in this District and elsewhere in the United States. For example, Bright Data's customers directly infringe at least claims 1, 9, and 11 of the '091 Patent when they use the Accused Products as intended and instructed by Bright Data. As explained above, Bright Data instructs its customers (and potential customers) regarding how to use the Accused Products. Such instructions include Bright Data's website discussing the Accused Products (https://brightdata.com/products/data-collector; https://brightdata.com/products/web-unlocker; https://brightdata.com/products/search-engine-crawler), Bright Data's website (and video) discussing the Data Collector start guide (https://brightdata.com/data-collector-start-

guide), Bright Data's Web Unlocker ebook (https://brightdata.com/static/lum_un-blocker_ebook.pdf?md5=6118555-d78a59f4), Bright Data's FAQ website discussing the Accused Products (describing each product and explaining to customers and potential customers how to use each product) (https://help.brightdata.com/hc/en-us), Bright Data's YouTube channel (https://www.youtube.com/channel/UCM_0cG1ljAoEUcZIyoUIq6g), including videos on that channel discussing the Accused Products and related proxy network(s) (e.g., residential, data center, etc.) (e.g., the publicly available Bright Data videos at https://www.youtube.com/watch?v=q8kFe5MPAC0&t=424s, https://www.youtube.com/watch?v=sECHnRf3dXw, https://www.youtube.com/watch?v=G_DJu97_Zqs, and https://www.youtube.com/watch?v=Kh-22LVgUTw), as well as the other portions of Bright Data's website discussed and cited above.

103.    As a result of Bright Data's infringement of the '091 Patent, Oxylabs has suffered and continues to suffer damages. Thus, Oxylabs is entitled to recover from Bright Data the damages Oxylabs sustained (and continues to sustain) as a result of Bright Data's wrongful and infringing acts in an amount no less than its lost profits and/or a reasonable royalty, together with interest and costs fixed by this Court together with increased treble damages under 35 U.S.C. § 284.

104.    Oxylabs has suffered damages due to the infringing activities of Bright Data and other persons who are in active concert or participation therewith, and Oxylabs will continue to suffer irreparable harm for which there is no adequate remedy at law unless Bright Data's infringing activities are permanently enjoined by this Court. Oxylabs practices the '091 Patent and, on information and belief, practicing the '091 Patent is required for a competitive offering in the market serviced by Oxylabs' Scraper API service and the Accused Products. Non-exclusive

examples of such damage include loss of market share, lowered prices and the inability of Oxylabs to obtain the revenues and profits it would have been able to obtain but for the infringement, lost sales in other services when customers did not purchase Oxylabs' Scraper API service from Oxylabs, including loss of convoyed sales, and harm to Oxylabs' reputation as a result of Bright Data's lower quality and less protected offerings damaging the reputation and perception of the relevant market that relies on the technology of the '091 Patent.

105.   Bright Data willfully infringes the '091 Patent. At least as early as the filing and service of Oxylabs' original Complaint for Patent Infringement (ECF No. 1), Bright Data has been on actual notice of the '091 Patent. Upon information and belief, Bright Data continues to deliberately and intentionally infringe the '091 Patent. Bright Data knew or should have known that its actions would cause infringement of the '091 Patent, yet Bright Data continues to infringe the '091 Patent.

106.   This is an exceptional case warranting an award of treble damages to Oxylabs under 35 U.S.C. § 284, and an award of Oxylabs' attorneys' fees under 35 U.S.C. § 285.

## JURY DEMAND

107.   Oxylabs demands, pursuant to Federal Rule of Civil Procedure 38, a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

108.   Oxylabs respectfully requests that the Court:

A.     Adjudge that Bright Data has and is infringing the Asserted Patents;

B.     Adjudge that Bright Data's infringement of the Asserted Patents has been willful;

C.      Award Oxylabs damages in an amount adequate to compensate Oxylabs for Bright Data's infringement of the Asserted Patents, but in no event less than the greater of Oxylabs' lost profits and/or a reasonable royalty under 35 U.S.C. § 284;

D.      Award enhanced damages pursuant to 35 U.S.C. § 284;

E.      Enter an order finding that this is an exceptional case and awarding Oxylabs its costs, attorney's fees, and expenses, whether under 35 U.S.C. § 285 or otherwise;

F.      Award pre-judgment and post-judgment interest on the damages awarded at the highest rate allowed by law;

G.      Enter a permanent injunction against Bright Data from infringing the Asserted Patents, including an order enjoining the marketing, making, manufacture, sale, offer for sale, use, and/or importation of all Bright Data products found to infringe (or, if the Court believes that an injunction is not warranted, Oxylabs request an award of a compulsory ongoing royalty);

H.      Order an accounting of all damages; and

I.      Grant Oxylabs such other and further relief, general and special, at law or in equity, as the Court deems just and equitable.

Dated: May 10, 2022

Respectfully submitted,

BRETT C. GOVETT
  Texas State Bar No. 08235900
  brett.govett@nortonrosefulbright.com
**NORTON ROSE FULBRIGHT US LLP**
2200 Ross Avenue, Suite 3600
Dallas, Texas 75201
Telephone: (214) 855-8000
Telecopier: (214) 855-8200

DANIEL S. LEVENTHAL
  Texas State Bar No. 24050923
  daniel.leventhal@nortonrosefulbright.com
**NORTON ROSE FULBRIGHT US LLP**
1301 McKinney, Suite 5100
Houston, Texas 77010-3095
Telephone: (713) 651-5151
Telecopier: (713) 651-5246

MICHAEL C. SMITH
  Texas State Bar No. 18650410
  michael.smith@solidcounsel.com
**SCHEEF & STONE, LLP**
113 East Austin Street
Marshall, Texas 75670
Telephone: (903) 938-8900
Telecopier: (972) 767-4620

STEVEN CALLAHAN
  Texas State Bar No. 24053122
  scallahan@ccrglaw.com
CHRISTOPHER T. BOVENKAMP
  Texas State Bar No. 24006877
  cbovenkamp@ccrglaw.com
CRAIG TOLLIVER
  Texas State Bar No. 24028049
  ctolliver@ccrglaw.com
GEORGE T. "JORDE" SCOTT
  Texas State Bar No. 24061276
  jscott@ccrglaw.com
MITCHELL SIBLEY
  Texas State Bar No. 24073097
  msibley@ccrglaw.com
JOHN HEUTON
  *Pro Hac Vice*
  jheuton@ccrglaw.com
**CHARHON CALLAHAN**
**ROBSON & GARZA, PLLC**
3333 Lee Parkway, Suite 460
Dallas, Texas 75219
Telephone: (214) 521-6400
Telecopier: (214) 764-8392

*Counsel for Plaintiff Metacluster LT, UAB*

44

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a) on May 10, 2022. As such, this document was served on all counsel who are deemed to have consented to electronic service. Local Rule CV-5(a)(3)(A). The foregoing document has also been served on Bright Data's counsel, Robert Harkins, Esq., by e-mail on May 10, 2022.

STEVEN CALLAHAN

## CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL

The undersigned certifies that the foregoing document was filed under seal pursuant to Eastern District of Texas' Patent Rule 2-2.

STEVEN CALLAHAN

45