## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

Metacluster LT, UAB,

        Plaintiff,

        v.

Bright Data Ltd.,

        Defendant.

Civil Action No.
2:22-cv-00011-JRG-RSP

**JURY TRIAL DEMANDED**

█████████████

## METACLUSTER'S RESPONSE TO BRIGHT DATA'S MOTION
## TO DISMISS METACLUSTER'S FIRST AMENDED COMPLAINT

## <u>TABLE OF CONTENTS</u>

I.      INTRODUCTION ............................................................................................. 1

II.     LEGAL AUTHORITY ...................................................................................... 1

III.    BACKGROUND ............................................................................................... 3

IV.     ARGUMENT .................................................................................................... 3

    A.   Metacluster's FAC And Incorporated Infringement Contentions
        Plausibly Allege That The Accused Products Meet The "Proxy Provider"
        Limitation Of The '948 Patent ................................................................... 4

        1.   Metacluster's Infringement Allegations Comport With The '948 Patent
               Claims And The Relevant PTAB Proceedings .................................. 4

        2.   The FAC And Metacluster's Infringement Contentions Provide BD
               With Fair Notice Of What Meets The Proxy Provider Limitation ................... 5

        3.   BD's Other Arguments Go To The Merits Of Metacluster's Claims
               And Are Inappropriate At The Pleading Stage ............................... 10

    B.   Metacluster Has Likewise Provided BD With Fair Notice Of Its Infringement
        Claims For The '498 And '091 Patents ................................................... 12

    C.   The Court Should Deny BD's Request For A More Definite Statement ................ 14

    D.   If The Court Finds Any Cause Of Action Deficient, Metacluster Respectfully
        Requests Leave To Amend ..................................................................... 14

V.      CONCLUSION ............................................................................................... 15

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ...............................................................................................................2

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ...............................................................................................................2

*BMC Software, Inc. v. ServiceNow, Inc.*,
  14-CV-903, 2015 WL 2379333 (E.D. Tex. May 18, 2015) ...................................................2

*Byrd v. Bates*,
  220 F.2d 480 (5th Cir. 1955) ...............................................................................................15

*Disc Disease Sols. Inc. v. VGH Sols., Inc.*,
  888 F.3d 1256 (Fed. Cir. 2018) .......................................................................................6, 14

*Foman v. Davis*,
  371 U.S. 178 (1962) .............................................................................................................15

*Frase v. McCormick*,
  19-CV-00139, 2020 WL 5665097 (E.D. Tex. Aug. 17, 2020) ...............................................3

*Hart v. Bayer Corp.*,
  199 F.3d 239 (5th Cir. 2000) ...............................................................................................15

*Johnson v. City of Shelby*,
  135 S. Ct. 346 (2014) .............................................................................................................3

*Kelly v. Nichamoff*,
  868 F.3d 371 (5th Cir. 2017) .................................................................................................3

*LaForge v. Angelina Cnty., Texas*,
  20-CV-72, 2020 WL 5580888 (E.D. Tex. Aug. 31, 2020) .....................................................1

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
  572 U.S. 118 (2014) ...............................................................................................................3

*Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*,
  594 F.3d 383 (5th Cir. 2010) ...................................................................................2, 11, 12

*Lyn-Lea Travel Corp. v. Am. Airlines, Inc.*,
  283 F.3d 282 (5th Cir. 2002) ...............................................................................................15

*Neitzke v. Williams*,
    490 U.S. 319 (1989)................................................................................................2

*Opticurrent, LLC v. Power Integrations, Inc.*,
    16-CV-325, 2016 WL 9275395 (E.D. Tex. Oct. 19, 2016)....................................2

*Ziglar v. Abbasi*,
    137 S. Ct. 1843 (2017)........................................................................................2, 6

**OTHER AUTHORITIES**

Fed. R. Civ. P. 8(a)(2)......................................................................................................2

Fed. R. Civ. P. 8(e)..........................................................................................................3

Fed. R. Civ. P. 15(a)(2)..................................................................................................15

Plaintiff Metacluster LT, UAB ("Metacluster") files this Response to Defendant's Motion to Dismiss Metacluster's First Amended Complaint for Failure to State a Claim, or in the Alternative for a More Definite Statement (the "Motion") (ECF No. 32), and respectfully shows as follows:

## I.      INTRODUCTION

Metacluster filed its Original Complaint on January 7, 2022. ECF No. 1. On April 24, 2022, Bright Data Ltd. ("BD") filed its first motion to dismiss. In an attempt to streamline these proceedings and minimize the burden on the Court, rather than responding to the first motion to dismiss, Metacluster served its First Amended Complaint ("FAC") which supplemented Metacluster's already detailed disclosure of its infringement theories by, for example, attaching and incorporating Metacluster's infringement contentions. Undeterred, and apparently not wanting to focus on the substance of the case, BD filed a second motion to dismiss.

BD's Motion attempts to hold Metacluster to an unprecedented level of disclosure for a complaint. The Motion asks the Court to dismiss the FAC for failure to *prove* the merits of Metacluster's case at the pleading stage by, for example, seeking to require Metacluster to identify, before discovery, specific internal components of BD's accused services that meet claim limitations. The FAC, which attaches and incorporates Metacluster's 230 pages of detailed infringement contentions, provides a detailed element-by-element explanation of Metacluster's infringement theories. This goes far beyond Metacluster's pleading requirement to provide fair notice of its infringement claims and the factual bases from which to draw a reasonable inference that the Accused Products practice the claims. As such, Metacluster respectfully requests that the Court deny BD's Motion.

## II.     LEGAL AUTHORITY

"A Rule 12(b)(6) motion to dismiss 'is viewed with disfavor and is rarely granted.'" *La-*

*Forge v. Angelina Cnty., Texas*, No. 20-CV-72, 2020 WL 5580888, at *2 (E.D. Tex. Aug. 31, 2020) (quoting *Harrington v. State Farm Fire & Cas. Co.*, 563 F.3d 141, 147 (5th Cir. 2009)). To state a proper claim for relief, a pleading need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In other words, the plaintiff must only "plead factual matter that, if taken as true, states a claim[.]" *Ashcroft v. Iqbal*, 556 U.S. 662, 666 (2009). Detailed factual allegations are *not* required under Rule 8. *Id.* at 678; *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Instead, accepting the complaint's factual assertions as true,[1] the asserted claims need only be plausible. *Iqbal*, 556 U.S. at 666; *see also BMC Software, Inc. v. ServiceNow, Inc.*, 14-CV-903, 2015 WL 2379333, at *1 (E.D. Tex. May 18, 2015) ("The plausibility standard is not akin to a 'probability requirement[.]'"). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 666.

"The ultimate question in a Rule 12(b)(6) motion is whether the complaint states a valid claim when all well-pleaded facts are assumed true and are viewed in the light most favorable to the plaintiff." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010). "A plaintiff is not required to prove its case at the motion to dismiss stage." *Opticurrent, LLC v. Power Integrations, Inc.*, 16-CV-325, 2016 WL 9275395, at *4 (E.D. Tex. Oct. 19, 2016). "The Court's task in reviewing a motion to dismiss is to determine whether the plaintiff has stated a legally cognizable claim which is plausible, not to evaluate the plaintiff's likelihood

---

[1]     On a motion to dismiss, the Court "accepts as true the facts alleged in the complaint." *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1852 (2017); *Twombly*, 550 U.S. at 555-56 ("a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely") (citations and quotations omitted); *see also Neitzke v. Williams*, 490 U.S. 319, 327 (1989) ("What Rule 12(b)(6) does not countenance are dismissals based on a judge's disbelief of a complaint's factual allegations.").

of success." *Frase v. McCormick*, 19-CV-00139, 2020 WL 5665097, at *1 (E.D. Tex. Aug. 17, 2020) (citing *Thompson v. City of Waco, Texas*, 764 F.3d 500, 503 (5th Cir. 2014)).[2] Factual allegations are construed in the plaintiff's favor. *See, e.g.*, *Kelly v. Nichamoff*, 868 F.3d 371, 374 (5th Cir. 2017). "Pleadings must be construed so as to do justice." Fed. R. Civ. P. 8(e).

## III.   BACKGROUND

Metacluster filed this lawsuit on January 7, 2022, alleging infringement of U.S. Patent No. 10,601,948 (the "'948 Patent"), U.S. Patent No. 9,503,498 (the "'498 Patent"), and U.S. Patent No. 9,516,091 (the "'091 Patent"). ECF No. 1 at ¶ 2. BD's answer was not due until April 24, 2022. ECF No. 12. On April 14, the Court issued an order setting a Scheduling Conference which, in turn, established a May 4, 2022 deadline for Metacluster to serve its Infringement Contentions. ECF No. 17. Metacluster met that deadline.

BD filed its first Motion to Dismiss on April 24, 2022. ECF No. 23. Pursuant to Rule 15(a)(1)(B), Metacluster amended its Original Complaint on May 10, 2022. ECF No. 26. In its FAC, Metacluster attached and incorporated its 230 pages of Infringement Contentions. *See* ECF No. 26-4. Despite Metacluster's amendments, and attachment and incorporation of its Infringement Contentions, BD filed a second Motion to Dismiss on May 25, 2022. ECF No. 32.

## IV.   ARGUMENT

Metacluster's FAC, which includes 230 pages of infringement contentions, sets forth Metacluster's infringement theories and allegations in far more detail than is required to state a plausible claim for relief. Despite the detail provided, BD seeks more—for Metacluster to <u>prove</u>

---

[2]   *See also Johnson v. City of Shelby*, 135 S. Ct. 346, 346 (2014) (the Federal Rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted"); *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 134 n.6 (2014) ("If a plaintiff's allegations, taken as true, are . . . sufficient, then the plaintiff is entitled to an opportunity to prove them.").

the merits of its claims by identifying specific internal components that BD knows will be the subject of discovery and source code review.[3] Rule 8 does not require one to prove its case in the complaint, and the Court should deny the Motion.

> **A.    Metacluster's FAC And Incorporated Infringement Contentions Plausibly Allege That The Accused Products Meet The "Proxy Provider" Limitation Of The '948 Patent**

With respect to the '948 Patent, the Motion argues that Metacluster conflates the claim terms "proxy" and "proxy provider." *See, e.g.*, Mot. at 6. It is BD, however, that is conflating allegations to ignore Metacluster's assertion that the Accused Data Collector Product meets both the "proxy" and "proxy provider" limitations of the Asserted Claims. To the extent that BD contends Metacluster must identify the exact, internal components of the Accused Data Collector Product that meet the "proxy provider" limitation, BD is incorrect, as that information will be the subject of discovery and is solely in BD's possession. Metacluster is not required to prove the merits of its case at the pleading stage. Metacluster's FAC and incorporated Infringement Contentions go well beyond what is required—more than stating a plausible claim for relief.

> **1.    Metacluster's Infringement Allegations Comport With The '948 Patent Claims And The Relevant PTAB Proceedings**

Metacluster agrees that "proxy" and "proxy provider" "are distinct elements and . . . cannot be used interchangeably[.]" Mot. at 4. Relevant to the dispute at issue in the Motion, Claim 1 requires that (i) performance and availability information of the **proxy** be provided, (ii) a weight for the **proxy provider** be calculated, and (iii) a utilization threshold of the **proxy provider** be dynamically configured based on the calculation. ECF No. 26-1, '948 Patent, at 16:34-39. As explained below, Metacluster alleges that the Accused Data Collector Product distinctly per-

---

[3]    Further, if the Motion is any indication, the "proxy provider," "network appliance," and "executing . . . the removed embedded script" limitations of the Asserted Claims may also be the subject of claim construction, making BD's merits-based grounds for dismissal premature.

forms each of these limitations.

The '948 Patent was the subject of a denied *Inter Partes* Review petition filed by BD, the PTAB deciding on the merits that BD failed to establish a reasonable likelihood that it would prevail on at least one claim. When deciding whether to institute BD's petition, the PTAB construed the "proxy provider" term at issue here as "a **server** party providing an actual proxy as a service."[4] ECF No 32-3, Decision Denying Institution, IPR2021-00983 at 14 (PTAB Dec. 1, 2021). The PTAB provided the following construction: "[i]n accordance with the Specification's 'general terminology description,' which "describes a 'Proxy Provider' as 'the party providing the actual proxy as a service . . . [p]roxy services shall mean any proxy server that acts as an intermediary for requests from clients seeking resources from other servers.'" *Id.* (quoting '948 Patent at 6:16-19). Additionally, as noted by BD in the Motion, the Specification further describes a proxy provider as a "logical entity." Mot. at 4. Although the PTAB's construction is not binding on the Court, as explained below in Section IV(A)(3), Metacluster contends that the various proxy providers of the Accused Data Collector Product are the server parties providing an actual proxy as a service.

## 2.   The FAC And Metacluster's Infringement Contentions Provide BD With Fair Notice Of What Meets The Proxy Provider Limitation

BD is grasping at straws to argue that Metacluster is conflating the terms "proxy" and "proxy provider" to read the "proxy provider" limitation out of the claims. BD's position relies on a tortured reading of singular allegations in a vacuum, ignoring any context provided by the surrounding allegations or the Infringement Contentions. As discussed below, the FAC and Metacluster's incorporated Infringement Contentions provide BD with fair notice of Metacluster's

---

[4]   All emphases have been added in this brief unless otherwise noted.

theories of infringement, as well as the factual allegations from which to draw a reasonable in-ference that the Accused Data Center Product practices the "proxy provider" limitation. *See Disc Disease Sols. Inc. v. VGH Sols., Inc.*, 888 F.3d 1256, 1260 (Fed. Cir. 2018).

BD argues that its original Motion to Dismiss "first explained that Metacluster's allega-tions of infringement as to the '948 Patent didn't even purport to allege that Bright Data in-fringed every element of the independent claim asserted by Metacluster." Mot. at 2 (citing ECF No. 23, First Motion to Dismiss, at 2-3). A review of the cited portion of BD's original motion shows that BD relied on the allegations of a single paragraph that inadvertently omitted the word "provider" to accuse "Metacluster [of] alleg[ing] that the Accused Product 'calculates a weight for a proxy' – NOT 'a weight for the proxy provider' as recited by the claim." ECF No. 23 at 3. But BD ignored the allegations of a separate paragraph of Metacluster's Original Complaint, which made clear that the omission of the word "provider" from Paragraph 60 was inadvertent. Specifically, in Paragraph 72, Metacluster made the exact allegation BD claims was missing: "the Accused Data Collector Product includes the ability to calculate, at the smart proxy rotator, a weight for **the proxy provider**." ECF No. 1, Original Compl. at ¶ 72. Thus, Metacluster has always alleged, as required by the claims, that a weight is calculated for a proxy provider.

Metacluster has now amended Paragraph 60 to add the word "provider" to correct the omission, making clear what it already alleged in Paragraph 72 of the Original Complaint: that the Accused Data Collector Product calculates a weight *for the proxy provider*. Mot. at 5 (show-ing amendments to ¶ 60 in underline). Despite BD originally basing its conflation argument on this omission, BD now argues that the amendments are merely cosmetic. *Id.* The law, however, requires pleaded facts such as these to be taken as true. *Ziglar*, 137 S. Ct. at 1852.

With the FAC removing the primary basis for BD's conflation narrative, BD shifted fo-

cus to another mischaracterization of Metacluster's allegations. In the cited portion of BD's original motion, BD also incorrectly argued that "Metacluster alleges that the . . . **smart proxy rotator ('SPR') element is met by 'Bright Data's Proxy Manager** [that] provides customers of its various proxy networks access to 'success ratio metrics' that indicate the performance and availability of each proxy.'" ECF No. 23 at 2-3 (quoting a portion of the Original Complaint at ¶ 59).

But Metacluster made no such allegation. Instead, Metacluster provided the example of BD's Proxy Manager's tracking of success ratio metrics to evidence that BD tracks and provides "performance and availability information" for proxies to its customers—creating the reasonable inference that the Accused Data Collector Product also tracks and utilizes this type of "performance and availability information" as required by and for use in the Asserted Claims of the '948 Patent. The purpose of Metacluster's citation to BD's Proxy Manager—the inference that such information is tracked by the Accused Products—was made clear in the next paragraph of the Original Complaint: "Upon information and belief, the web scraper of the Accused Data Collector Product **also tracks and/or has access to performance and availability information of each proxy**, and provides such information to the Accused Data Collector Product's smart proxy rotator." *Id.* at ¶ 60. Metacluster's Infringement Contentions leave no doubt that, ███████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████ ECF No. 26-4 at 43 (p. 35 of Appendix A-1 of Metacluster's Infringement Contentions); *id.* at 39 (p. 31 of Appendix A-1) ("███████

██████████████████████████████████████████

███████████████████ ).

It is telling then that BD's Motion continues to cling to the allegation regarding the success ratio metrics tracked by BD's Proxy Manager. BD still argues:

> While Metacluster alleges that "Bright Data's Proxy Manager provides customers of its various proxy networks access to 'success ratio metrics' that indicate the performance and availability of each proxy," this allegation (a) refers to Bright Data's proxy networks, not to any proxy provider, and (b) addresses the success ratio metrics of "proxies," not proxy providers. Thus, the assertion fails to identify a proxy provider.

Mot. at 5. This logical leap fails. As explained immediately above, the allegation regarding BD's Proxy Manager draws the reasonable inference that the Accused Products practice the limitation "providing, by the Web Scraper, performance and availability information of **the proxy**." BD is correct that the allegation "addresses the success ratio metrics of 'proxies,' not proxy providers"—that is the point. BD's argument that "the assertion fails to identify a proxy provider" shows that it is BD, not Metacluster, that is conflating the limitations regarding "proxy" and "proxy provider."

BD is forced to take the cited allegations out of context because Metacluster's Infringement Contentions provide BD fair notice of Metacluster's infringement claims. With respect to the "providing, by the Web Scraper, **performance and availability information of the proxy** to the SPR" limitation, Metacluster alleges:



ECF No. 26-4 at 39, 43 (p. 31, 35 of Appendix A-1 to Metacluster's Infringement Contentions).

Thus, Metacluster clearly alleges that the Accused Products track and provide performance and availability information **for the proxy**.

With respect to "calculating, at the SPR, a weight **for the proxy provider**" and "dynamically configuring utilization threshold **of the proxy provider** based on the calculation", Metacluster alleges:



ECF No. 26-4 at 44-45 (p. 36-37 of Appendix A-1 to Metacluster's Infringement Contentions).

Notably, Metacluster also states for each of these three limitations:

> In addition to the provided contentions, Metacluster contends that this claim element is a software limitation, such that it need not comply with P.R. 3-1 for this element until 30 days after Bright Data produces its source code pursuant to the Court's Discovery Order. Metacluster intends to supplement these contentions af-

ter receipt of Bright Data's source code pursuant to the Court's Discovery Order.
*Id.* at 43-45 (p. 35-37 of Appendix A-1 to Metacluster's Infringement Contentions).

As evidenced by the above-cited contentions—incorporated into the FAC—there is no basis for BD's assertion that Metacluster is conflating the limitations "proxy" and "proxy provider." Rather, Metacluster clearly and distinctly pleads its theories of how the Accused Products infringe the Asserted Claims, including how performance and availability information of one or more "proxies" is used to calculate a weight for and dynamically configure the utilization threshold of a "proxy provider" based on the weight. These allegations provide more than the required fair notice of Metacluster's infringement claims.

### 3.     BD's Other Arguments Go To The Merits Of Metacluster's Claims And Are Inappropriate At The Pleading Stage

BD argues that its original Motion to Dismiss "explain[ed] for this Court how its system architecture made it impossible for Metacluster to cure the issue[,]" and now argues that "Metacluster has plead itself out of court" "[b]ecause Metacluster was required to identify a proxy provider and has instead only identified Bright Data's own proxies[.]" Mot. at 2, 6. First, BD's self-serving, merits-based argument regarding its system architecture—for which it provides no evidence whatsoever—is not permitted at the pleading stage. *See Lone Star Fund*, 594 F.3d at 387. Second, BD is incorrect in its contention that Metacluster has only identified BD's own proxies.

Metacluster's FAC and Infringement Contentions, including the allegations set forth above in Section IV(A)(2), explain its contentions regarding how the Accused Products dynamically configure a utilization threshold of a **proxy provider** using performance and availability information of a **proxy**. To the extent that BD demands that Metacluster identify exactly which internal components of the accused system comprise the "proxy providers" *at the pleading stage*, Metacluster is only required to state a plausible claim for relief—not identify internal or third-

party components that meet the "proxy provider" limitation. BD is aware that the identity of the components that comprise the "proxy providers" of the Accused Products is solely in BD's possession and will be the subject of discovery, including the review of source code and subsequent amendment of Metacluster's Infringement Contentions pursuant to the Court's Discovery Order.

To the extent that BD contends that its own internal components cannot be a "proxy provider," or that proxies provided by its own infrastructure cannot be from a "proxy provider," Metacluster disagrees. In any event, this type of fact-specific, merits-based argument should not be resolved on a Rule 12(b)(6) motion but as the case progresses, including potentially at *Markman*. *See Lone Star Fund*, 594 F.3d at 387. As BD notes, the PTAB construed the term "proxy provider" to mean "a server party providing an actual proxy as a service." Mot. at 8. ████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

██████████████████████████████

BD also argues that Metacluster is judicially estopped "from contradicting its 'proxy provider' claim construction position before the PTAB, which caused it to prevail in that forum" because it "disclaimed any construction of 'Proxy Provider' that could merely be met by a subset of proxies." Mot. at 7-9. This argument fails for at least two reasons. First, BD is incorrect that Metacluster is alleging that the "proxy provider" of the Accused Products is met by a "subset of proxies," and BD provides no support for that allegation. To the contrary, as discussed herein, Metacluster's allegations comport with the PTAB's construction of "proxy provider." Second, BD is incorrect that Metacluster's claim-construction position caused it to prevail with respect to the Smith reference. "Proxy provider" is one of several limitations that Metacluster argued that

Smith did not disclose. However, the PTAB's institution denial does not discuss or indicate that it considered whether Smith discloses a "proxy provider," and instead distinguished the '948 Patent based solely on Smith's failure to disclose a Web Scraper. ECF No. 32-3, '948 Patent Institution Decision, at 16-25. Under these circumstances, BD has no basis for its estoppel argument or its statement that "without that limitation the '948 Patent is anticipated." Mot. at 9; *see also* ECF No. 23, First Motion to Dismiss, at 10.

> **B.      Metacluster Has Likewise Provided BD With Fair Notice Of Its Infringement Claims For The '498 And '091 Patents**

BD argues that Metacluster's claims with respect to the '498 and '091 Patents must be dismissed because Metacluster "fail[s] to identify what network component could plausibly be tasked with intercepting webpages to remove and execute embedded scripts" or "to allege that the Accused Products execute removed embedded script with a network appliance." Mot at 10. As with the '948 Patent, Metacluster has provided BD with fair notice of its infringement claims, and BD demands information *at the pleading stage* that will be the subject of discovery, including source code review.

With respect to the "network appliance" limitation, BD overreaches with its demand that Metacluster identify the specific internal components of the Accused Products that meet this limitation. Metacluster has provided fair notice of its claim that the network appliance is the component or components of the Accused Products that (i) "executes a browser, crawler, or scraper that makes, sends, or executes the customer's request for one or more web pages[,]" (ii) "uses one or more of Bright Data's various proxy networks to fetch the web page requested via the customer's browser from the target server[,]" and (iii) "intercept[s]" "the response to the customer's request[.]" Original Compl. at ¶ 62. Although Metacluster identified the network appliance as the component "of each respective Accused Product," BD's original Motion to Dismiss asked: "Is

Metacluster representing that the network component is [] the customer's own computer that executes the customer's browser . . . ?" ECF No. 23 at 6. Accordingly, Metacluster amended its Original Complaint to further allege that "[t]he network appliance(s) are located in Bright Data's network between the customer's client device and the target web server." FAC at ¶ 62. Further, Metacluster's Infringement Contentions explain that ██████████████████████████████ ████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████." ECF No. 26-4 at 119 (p. 2 of Appendix A-2 to Metacluster's Infringement Contentions); *see also id.* at 127, 130, 133 (p. 10, 13, 16 of Appendix A-2).

As explained above in Section IV(A)(3), Metacluster is not required at the pleading stage to identify the specific internal components of the Accused Products that meet the "network appliance" limitation—that information is solely within BD's possession. Further, Metacluster has indicated that the "network appliance" limitations are software limitations for which it "intends to supplement these contentions after receipt of Bright Data's source code pursuant to the Court's Discovery Order." *See, e.g.*, ECF No. 26-4 at 122 (p. 5 of Appendix A-2 to Metacluster's Infringement Contentions).

Metacluster has likewise stated a plausible claim for relief with respect to the "executing . . . the removed embedded script" limitation by providing BD with fair notice of its infringement theory and the factual allegations from which to draw a reasonable inference that the limitation is met. *See Disc Disease Sols.*, 888 F.3d at 1260. The FAC alleges that "the network appliance . . . that intercepts the web page requested by the customer's browser executes any embedded scripts contained in the web page [and] the network appliance creates a modified web page with the embedded scripts removed." FAC at, e.g., ¶ 86. Further, Metacluster's Infringement Contentions

13

explain that:



*See, e.g.*, ECF No. 26-4 at 138 (p. 21 of Appendix A-2 to Metacluster's Infringement Contentions). Accordingly, the FAC and incorporated Infringement Contentions provide BD with fair notice that Metacluster alleges that the Accused Products are used to scrape web pages with embedded scripts, e.g., dynamic content, and subsequently provide the customer with modified webpages with any embedded scripts removed and replaced with the static content that results from executing the embedded scripts. Metacluster has stated a plausible claim for relief, and the Court should deny the Motion with respect to the '498 and '091 claims.

### C.     The Court Should Deny BD's Request For A More Definite Statement

As explained above, Metacluster has satisfied the pleading requirements by providing BD with fair notice of its infringement claims and the factual allegations from which to draw a reasonable inference that the Accused Products practice the Asserted Claims. Moreover, Metacluster's 230 pages of Infringement Contentions provide detailed explanations of Metacluster's infringement theories on an element-by-element basis for each Asserted Claim. The additional information BD seeks is solely in its possession, will therefore be the subject of discovery, and is information that Metacluster has expressly stated will be addressed in amended infringement contentions after BD's source code is reviewed pursuant to the Court's Discovery Order. The Court should deny BD's Rule 12(e) request.

### D.     If The Court Finds Any Cause Of Action Deficient, Metacluster Respectfully Requests Leave To Amend

Should the Court find any cause of action deficient, Metacluster respectfully requests

leave to amend. *See, e.g.*, *Hart v. Bayer Corp.*, 199 F.3d 239, 248 n.6 (5th Cir. 2000) ("[A] plaintiff's failure to meet the specific pleading requirements should not automatically or inflexib[l]y result in dismissal of the complaint with prejudice to re-filing. Although a court may dismiss the claim, it should not do so without granting leave to amend, unless the defect is simply incurable or the plaintiff has failed to plead with particularity after being afforded repeated opportunities to do so."); *Byrd v. Bates*, 220 F.2d 480, 482 (5th Cir. 1955) ("a court ordinarily should not dismiss the complaint except after affording every opportunity to the plaintiff to state a claim upon which relief might be granted") (citation and quotations omitted).

"[A] party may amend its pleading . . . [with] the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2); *see also Foman v. Davis*, 371 U.S. 178, 182 (1962) ("Rule 15(a) declares that leave to amend 'shall be freely given when justice so requires'; this mandate is to be heeded."). Here, the underlying facts and circumstances at issue may be a proper subject of relief, and there has been no undue delay, bad faith, dilatory motive, or repeated failure to cure deficiencies by amendments previously allowed. *Foman*, 371 U.S. at 182. Nor would Bright Data suffer undue prejudice by amendment or futility of amendment, as the case is effectively stayed currently. *Id.*; *see* ECF No. 29 (Order cancelling Scheduling Conference).

Respectfully, the Court should grant leave to replead if it believes any cause of action is deficient. *See, e.g.*, *Lyn-Lea Travel Corp. v. Am. Airlines, Inc.*, 283 F.3d 282, 286 (5th Cir. 2002) ("Federal Rule of Civil Procedure 15(a) requires the trial court to grant leave to amend 'freely,' and the language of this rule 'evinces a bias in favor of granting leave to amend.'").

## V.     CONCLUSION

For these reasons, Metacluster respectfully requests that the Court deny BD's Motion.

Dated: June 8, 2022

Respectfully submitted,


MICHAEL C. SMITH
  Texas State Bar No. 18650410
  michael.smith@solidcounsel.com
SCHEEF & STONE, LLP
113 East Austin Street
Marshall, Texas 75670
Telephone: (903) 938-8900
Telecopier: (972) 767-4620


BRETT C. GOVETT
  Texas State Bar No. 08235900
  brett.govett@nortonrosefulbright.com
NORTON ROSE FULBRIGHT US LLP
2200 Ross Avenue, Suite 3600
Dallas, Texas 75201
Telephone: (214) 855-8000
Telecopier: (214) 855-8200


DANIEL S. LEVENTHAL
  Texas State Bar No. 24050923
  daniel.leventhal@nortonrosefulbright.com
NORTON ROSE FULBRIGHT US LLP
1301 McKinney, Suite 5100
Houston, Texas 77010-3095
Telephone: (713) 651-5151
Telecopier: (713) 651-5246


STEVEN CALLAHAN
  Texas State Bar No. 24053122
  scallahan@ccrglaw.com
CHRISTOPHER BOVENKAMP
  Texas State Bar No. 24006877
  cbovenkamp@ccrglaw.com
CRAIG TOLLIVER
  Texas State Bar No. 24028049
  ctolliver@ccrglaw.com
GEORGE T. "JORDE" SCOTT
  Texas State Bar No. 24061276
  jscott@ccrglaw.com
MITCHELL SIBLEY
  Texas State Bar No. 24073097
  msibley@ccrglaw.com
JOHN HEUTON
  *Pro Hac Vice*
  jheuton@ccrglaw.com
CHARHON CALLAHAN
ROBSON & GARZA, PLLC
3333 Lee Parkway, Suite 460
Dallas, Texas 75219
Telephone: (214) 521-6400
Telecopier: (214) 764-8392

*Counsel for Plaintiff Metacluster LT, UAB*

16

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a) on June 8, 2022. As such, this document was served on all counsel who are deemed to have consented to electronic service. Local Rule CV-5(a)(3)(A). The foregoing was also served on Defendant's counsel, Robert Harkins, Esq., by e-mail on June 8, 2022.

STEVEN CALLAHAN

## <u>CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL</u>

The undersigned certifies that the foregoing document was filed under seal pursuant to the Eastern District of Texas' Patent Rule 2-2.

STEVEN CALLAHAN